CLINTON T. GRAVEEN,

     Plaintiff,

v.

MACKENZIE ROBERTS,

     Defendant.

Case No. 20-CV-1704-JPS

**ORDER**

**1. INTRODUCTION**

  Plaintiff, Clinton T. Graveen ("Plaintiff" or "Graveen"), brings this action under 42 U.S.C. § 1983 pro se. On September 28, 2021, pursuant to 28 U.S.C. § 1915A, the Court screened his complaint and identified which claims may proceed. ECF No. 10. Plaintiff proceeds on an Eighth Amendment claim against Defendant Mackenzie Roberts ("Roberts") for deliberate indifference to Plaintiff's serious medical need and a state-law negligence claim. *Id.* at 8.

  On September 15, 2022, Defendant filed a motion for summary judgment, which is now fully briefed and ready for disposition. ECF Nos. 18, 28, 31. For the reasons described in detail below, the Court will grant Defendant's motion as to the Eighth Amendment deliberate-indifference claim, will decline to exercise supplemental jurisdiction over the state-law negligence claim, and will dismiss this action accordingly.

**2. LEGAL STANDARD - SUMMARY JUDGMENT**

  Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 3. FACTUAL BACKGROUND

In compliance with the Court's order, the parties submitted a stipulated set of facts. ECF No. 20. As such, the following facts are taken directly from the parties' stipulated facts ("PSF"). Defendants also included a list of disputed facts as identified by Plaintiff. ECF No. 23-2.[1]

### 3.1 Plaintiff's Care Generally

During the timeframe relevant to this lawsuit, Plaintiff Clinton T. Graveen was an inmate at Dodge Correctional Institution. Parties' Stipulated Facts ("PSF") 1. During the timeframe relevant to this lawsuit, Defendant MacKenzie Roberts ("Roberts") was a Correctional Officer at Dodge Correctional Institution. PSF 2. On July 30, 2020, Mr. Graveen was transferred to the Dodge Correctional Institution ("DCI") from the Vilas County Jail. PSF 3. On August 2, 2020, Mr. Graveen saw a nurse for an

---

[1]The Court acknowledges and compliments the parties' efforts in complying with its meet-and-confer requirement as to the facts in this case. The parties' diligence has made the facts of this case and the disputes clear.

abscess on his left buttock that started on July 31, 2020. The nurse visualized a firm, edematous (swollen) area of induration (redness and irritation) on his left medial buttock and was able to express a scant amount of purulent drainage. PSF 4. After receiving a verbal order from the on-call doctor, the nurse took a culture and sent it to the lab. The doctor also ordered Bactrim DS, and the nurse provided Mr. Graveen with APAP (Tylenol) for pain and a warm washcloth to apply to the wound. PSF 5. Also on August 2, the nurse scheduled a provider follow-up, as well as an appointment with nursing in three days and told Mr. Graveen to contact Health Services Unit ("HSU") if his pain increased or if he developed a fever or chills. He verbalized his understanding. PSF 6. Also on August 2, 2020, a nurse placed an order for extra washcloths for 30 days per nursing protocol (PNP), and a doctor signed off on the order. PSF 7.

On August 3, 2020, Mr. Graveen was again seen by a nurse for a buttocks wound assessment. The nurse encouraged Mr. Graveen to wash the affected site daily with soap and water and to apply warm moist compress throughout the course of the day to help promote drainage and increased comfort. Mr. Graveen was scheduled for a follow up evaluation. PSF 8. Mr. Graveen was also seen by Dr. Richard Fuller on August 3, 2020 for a follow up regarding his abscess. There was a 5cm X 4cm area of erythema (redness) on his left superior medial buttock with central induration and mild tenderness to palpation. PSF 9. Dr. Fuller's plan was to continue Mr. Graveen on the Bactrim DS and APAP (Tylenol) as needed for pain. He encouraged Mr. Graveen to apply warm compresses to promote drainage as this would be better than having to undergo an incision and drainage procedure. He also ordered a medical shower for 7 days. Dr. Fuller stated he would not see Mr. Graveen back unless the

wound worsened despite this treatment plan and required surgical intervention. PSF 10.

On August 5, 2020, Mr. Graveen was seen by a nurse for a wound dressing assessment. The wound was cleaned with soap and water and the dressing was changed. PSF 11. On August 7, 2020, Mr. Graveen was seen by a nurse for a wound dressing assessment. The wound was cleaned with soap and water and the dressing was changed. PSF 12. On August 8, 2020, the culture came back as abnormal, meaning Mr. Graveen was positive for MRSA. PSF 13. MRSA is an infection which is caused by a type of staph bacteria that has become resistant to many of the antibiotics used to treat ordinary staph infections. MRSA, and actually any staph infection, generally causes boils or collections of pus. The treatment for MRSA is generally supportive. The boil/abscess needs to drain and that is the definitive treatment. Advanced Care Providers use warm soaks to encourage the abscess to open on its own or perform an I&D (incision and drainage) for stubborn abscesses or large/deep ones. PSF 14.

On August 8, 2020, a nurse saw Mr. Graveen for a wound dressing assessment. The wound was cleaned with soap and water and the dressing was changed. He reported his overall pain level was tolerable, however, dressing changes with packing was an aggravating factor. PSF 15. Also on August 8, Mr. Graveen reported he recently took his last dose of APAP (Tylenol), so the nurse reviewed his medication orders and Mr. Graveen did not have any medications available for pain management at that time. The nurse placed an ordered for APAP (Tylenol) and ibuprofen PNP and stated the nursing staff will request a standing order from the Advanced Care Provider (ACP) seeing that PNP orders expire in three days. PSF 16.

Page 4 of 16
Case 2:20-cv-01704-JPS   Filed 02/28/23   Page 4 of 16   Document 32

On August 9, 2020, Mr. Graveen was seen by a nurse for a wound dressing assessment. The wound was cleaned with soap and water and the dressing was changed. PSF 17. On August 11, 2020, Mr. Graveen was seen by a nurse. The wound area was free of infection and healing with no packing needed. Mr. Graveen was given gauze and tape to cover the area. He was also given a washcloth and towel to help keep the area covered. Mr. Graveen was taken off daily wound care and would have a follow up wound check on August 14. PSF 18.

A nurse saw Mr. Graveen again on August 14, 2020 for a routine wound evaluation. Mr. Graveen stated that packing was recently discontinued as the result of healing and decreased tunneling. The depth was less than 0.5 cm and the redness and induration to the affected area had improved significantly. PSF 19. At the August 14 visit, Mr. Graveen reported the wound care included washing with soap and water and changing the Band-Aid twice daily. He was provided with antibacterial soap, gauze and more Band-Aids. There were no symptoms of infection present at the time of the evaluation. Mr. Graveen was told to continue the daily wound care practices. PSF 20. Dr. Fuller saw Mr. Graveen on August 18, 2020 for his regular history and physical for intake at DCI. Dr. Fuller noted his buttock abscess was improving. Mr. Graveen reported it drained a large amount of fluid and had to be packed with gauze by nursing staff. However, this had since resolved and he had mild soreness in the area but no continued drainage. PSF 21. Mr. Graveen's physical examination on August 18 showed his left medial buttock has a 2-3 millimeter crusted area with minimal tenderness to palpation and perhaps 1 cm of induration underneath. He had no acute rash or worrisome lesions. Dr. Fuller discussed the importance of good skin hygiene and avoiding regular

manipulation of the skin, which might break that skin barrier and increase the risk of developing cellulitis or carbuncles. PSF 22.

### 3.2 Plaintiff's Interaction With Roberts

On August 3, 2020, Roberts was working as a Correctional Officer in Unit 19 from 2pm to 10pm. PSF 28. On August 4, 2020, Roberts was working as a Correctional Officer in Unit 24 from 2pm to 10pm. PSF 29. On August 4, 2020, Mr. Graveen was housed in Unit 24, Bed 19A. The cells in Unit 24 are wet cells meaning they have a toilet and sink with running water. PSF 30. Per Wisconsin Administrative Code DOC 309.24(2), institutions shall provide a minimum of two bathing periods per week for each inmate. At DCI, showers are given only on certain days and specific times on each unit. Showers are offered on each unit at least two times per week. Unit showers are typically offered one cell at a time, meaning when an inmate's cell door opens, it is up to him to either take or refuse the shower at that provided time. PSF 31. A medical shower just means an inmate has an order from the HSU to have more frequent showers. This is usually documented in the Wisconsin Integrated Corrections System ("WICS") database. When a doctor orders medical showers for an inmate, the order is placed in the WICS database. This database is used throughout Corrections and gives security staff readily available information on offenders, including special medical needs. PSF 52.

Inmates are not allowed out of their cells between the 9:00pm and 6:15am counts for security reasons, unless it is an emergency and a supervisor is present. There are less correctional officers on third shift, so there is no inmate movement during this time on or off the unit. PSF 33. Mr. Graveen's medical record apparently reflects that a "CO Roberts" was

notified about Mr. Graveen having an order for medical showers on August 3, 2020. PSF 34.

On August 27, 2020, Mr. Graveen was transferred to the Redgranite Correctional Institution ("RCI"). PSF 23. On September 11, 2020, Mr. Graveen was seen by Advanced Practice Nurse Prescriber (APNP) Christine Burnett for his intake visit at RCI with a chief complaint of an abscess on his left buttock. He stated he had an abscess on his buttock that had resolved and he had no new complaints. PSF 24. Mr. Graveen's physical examination showed his skin was warm, dry, and intact without lesions, rashes, or ulcers. APNP Burnett prescribed chlorhexidine 4% topical soap, which is an antiseptic soap that helps reduce bacteria to avoid a recurrent infection. She also educated Mr. Graveen on the importance of hygiene to avoid a recurrence. PSF 25.

If Dr. Sukowaty, the Associate Director for the Department of Corrections, had been Mr. Graveen's treating provider, she would have only ordered extra washcloths because warm moist compresses with a washcloth are the preferred form of treatment for an abscess because it prevents scabbing and promotes drainage. PSF 26. In Mr. Graveen's case, he was given an order for extra washcloths and instructed to do warm moist compresses, and he also had a daily order for medical showers, which is a reasonable course of treatment for an abscess from a MRSA infection. PSF 27.

4.      **ANALYSIS**

Defendant's motion for summary judgment seeks dismissal of both claims in the case, the Eighth Amendment deliberate inference to a serious medical need and the state-law negligence claim. As discussed below in detail, the Court grants summary judgment on the Eighth Amendment

claim and accordingly declines to exercise supplemental jurisdiction on the state-law claim.

### 4.1 Eighth Amendment Claim – Deliberate Indifference

Turning to the heart of Defendant's motion for summary judgment, the Court first describes in detail the applicable Eighth Amendment standard and in turn analyzes the facts of this case as to that standard. As discussed in detail below, the Court finds that Plaintiff's claim fails on the subjective prong of the deliberate indifference test, and therefore Defendant is entitled to judgment as a matter of law on this claim.

#### 4.1.1 Eighth Amendment Standard

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. To prove that Defendant violated his rights under the Eighth Amendment, Plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that Defendant was "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to

meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendant's motion for summary judgment, Plaintiff must present evidence showing the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640

(7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016). Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

### 4.1.2 Eight Amendment - Analysis

First, Defendant does not argue that Plaintiff did not have an objectively serious medical need. In certain circumstances, an infected skin wound can rise to the level of an objectively serious medical condition. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a layperson would recognize that a "purulent draining infection" caused by an infected cyst that was accompanied by extreme pain and high fevers is a sufficiently serious medical condition); *Myrick v. Anglin,* 496 Fed. App'x 670, 674 (7th Cir. 2012) (an inmate's "claim of 'excruciating pain' from his skin infections, including [resistant staph] infections, presented a sufficiently serious condition to support an Eighth Amendment claim"). As identified above, it is undisputed that Plaintiff was receiving medical treatment for an abscess on his left buttock around the relevant time period and that he was later diagnosed with MRSA, an infection that generally causes boils or collections of pus. PSF 4, 14. As such, for the purposes of this Order the Court will assume, without definitively ruling, that Plaintiff suffered from

Page 10 of 16
Case 2:20-cv-01704-JPS   Filed 02/28/23   Page 10 of 16   Document 32

an objectively serious medical condition and satisfies the first prong of the deliberate indifference standard.

Second, assuming Plaintiff suffered a serious medical condition, the Court finds that Defendant was not deliberately indifferent to Plaintiff's need for treatment. Defendant acknowledges the disputed fact as to the timing of Plaintiff's request to Defendant Roberts for a medical shower. ECF No. 31 at 2. Defendant therefore accepts, as she must, for the purposes of this motion that Plaintiff did inform Defendant prior to 9 p.m. (the start of the third shift where showers were prohibited for safety reasons) of his need for a medical shower. *See* ECF No. 23-2 at 2. Defendant argues, however, that this dispute does not preclude summary judgment because Plaintiff cannot show that "one 'missed' shower caused any delay to the healing of [Plaintiff's] wound." ECF No. 31 at 4. The Court agrees.

A significant delay in treatment clearly supports finding deliberate indifference when the materials for treatment are widely available and easily obtainable. *See, e.g.*, *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (finding that the defendants' delay in providing the plaintiff with over-the-counter pills to treat gastro-esophageal reflux disease for two months demonstrated deliberate indifference). Even a short delay may be indicative of deliberate indifference when an inmate's condition causes considerable pain. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). For example, in *Rodriguez*, prison staff incorrectly administered an intravenous line in the plaintiff's arm. *Id.* at 819–20. During the plaintiff's four-day hospital stay, staff treated plaintiff's resulting pain by pushing the intravenous line further into the plaintiff's arm and providing him with an ice pack. *Id.* at 832. As a result of the delay in treatment, the plaintiff developed a serious and contagious infection. *Id.*

The Seventh Circuit found that, given the alleged facts, the plaintiff sufficiently stated a claim under the Eighth Amendment to survive a motion to dismiss. *Id.* In contrast, a similar delay for a less painful condition may be tolerated under the Eighth Amendment. *See, e.g.*, *Gutierrez*, 111 F.3d at 1374 (finding that the plaintiff could not survive judgment on the pleadings when officials delayed treating a mild cyst infection for six days).

In *Gutierrez*, the Seventh Circuit explained that courts "must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Id.* at 1375. In that case, the court reviewed the detailed account of the care Plaintiff received for a cyst over a ten-month period. *Id.* During that time period, the plaintiff sought and received some sort of treatment on approximately nine occasions (other than those about which he complained), and he received pain medication, antibiotics, and sitz baths. *Id.* Based on its review, the court found it was "clear that these occasional delays were simply isolated instances of neglect, which taken alone or collectively [could not] support a finding of deliberate indifference. " *Id.* Similarly, in *Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir.1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment. Here, in looking at the totality of Plaintiff's medical treatment, the Court cannot say that the care evidences deliberate indifference to Plaintiff's serious medical needs. Plaintiff saw medical professionals at DCI at least ten times during the month of August (on August 2, twice on August 3, August 5, August 7, August 8, August 9, August 11, August 14, and August 18.) *See* PSF 4–22. During that time, he received pain medication, diagnostic testing (for MSRA), wound dressing assessment, and medical supplies to

treat his wound. *See id.* Additionally, Defendant provides undisputed evidence that Plaintiff recovered shortly thereafter despite his lack of a medical shower on August 4, 2020. On August 18, 2020, Plaintiff's physical examination showed he had no acute rash or worrisome lesions. PSF 22. On September 11, 2020, following his transfer to RCI, Plaintiff relayed to a medical professional that he had an abscess on his buttock that had resolved, and he had no new complaints. PSF 24. Based on this record, the Court does not find that Defendant's one-day delay of a medical shower rose to the level of a constitutional violation for deliberate indifference to a serious medical need.

Moreover, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996). Plaintiff has produced no independent evidence that the one-day delay for a medical shower "exacerbated the injury or unnecessarily prolonged pain." *See Petties*, 836 F.3d at 730–31. The undisputed facts show that Plaintiff saw a medical professional for his condition both the day before and after the incident with Defendant Roberts (August 3, 2020 and August 5, 2020). *See* PSF 8, 11. Plaintiff received extra washcloths to treat his condition and was encouraged to wash the affected site daily with soap and water and to apply warm moist compress throughout the course of the day to help promote drainage and increased comfort. PSF 7, 8. Additionally, Defendant submitted evidence from medical professional Dr. Sukowaty, the Associate Director for the Department of Corrections (not a defendant), that had she been Mr. Plaintiff's treating provider, she would have only ordered extra washcloths because warm moist compresses with a

washcloth are the preferred form of treatment for an abscess because it prevents scabbing and promotes drainage. PSF 26. In other words, Defendant provides medical evidence that daily showers were not needed to treat Plaintiff's wound. Plaintiff attempts to dispute this fact, *see* ECF No. 23-2 at 1, however, he provides no verified evidence of any detrimental effect. *See Miller v. Wexford Health Sources, Inc.*, 812 F. App'x 371, 374–75 (7th Cir. 2020) (affirming summary judgment when the plaintiff failed to provide evidence contradicting doctor's opinion "that even if there were isolated instances when he did not receive a bandage change, these would not have affected the overall healing process."). As such, the Court finds that Plaintiff has failed to show that Defendant's delay of one day for Plaintiff's medical shower caused him any unnecessarily prolonged pain or exacerbated his injury.

Based on the forgoing, the Court finds that no reasonable jury could find that Defendants were subjectively deliberately indifferent to a serious medical need. " '[D]eliberate indifference' is a synonym for 'intentional or reckless conduct,' and 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Enge v. Obaisi*, No. 13 C 5154, 2016 WL 1359368, at *2 (N.D. Ill. Apr. 6, 2016) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). The Court cannot draw this inference based on the summary judgment record here. The Court will therefore grant Defendant's motion for summary judgment as to the Eighth Amendment deliberate-indifference claim.

### 4.2 State-Law Negligence

As noted above, Plaintiff has alleged a state-law negligence claim against Roberts, the intricacies of which need not be elaborated on because the Court declines to exercise supplemental jurisdiction over that claim. *See*

*Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims."). As such, the Court relinquishes jurisdiction over Plaintiff's state-law claim, which will be dismissed without prejudice.

### 5. CONCLUSION

For the reasons explained above, the Court grants Defendant's motion for summary judgment as to the Eighth Amendment claim and dismisses such claim with prejudice. Additionally, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim, and thus will dismiss that claim without prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment, ECF No. 18, be and the same is hereby **GRANTED** as provided in this Order;

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment deliberate-indifference claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c), declines to exercise supplemental jurisdiction over the state-law negligence claim and the state-law negligence claim be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.